**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 12-cv-01623-REB-CBS

MARK D. MORRIS,

    Plaintiff,

v.

MILGARD MANUFACTURING INCORPORATED, a Washington corporation,

    Defendant.

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT MILGARD'S MOTION TO COMPEL ARBITRATION**

**Blackburn, J.**

The matter before me is **Defendant Milgard's Motion To Compel Arbitration** [#133],[1] filed September 19, 2012. I grant the motion in part and deny it in part.

## I. JURISDICTION

Putatively, I have jurisdiction over this matter. My jurisdiction arises under 28 U.S.C. §§ 1331 (federal question) and 1367 (supplemental jurisdiction).

## II. STANDARD OF REVIEW

The decision whether to enforce an arbitration agreement involves a two-step inquiry. First, I must determine whether the parties agreed to arbitrate the dispute. ***Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth***, 473 U.S. 614, 626, 105 S.Ct. 3346, 3353, 87 L.Ed.2d 444 (1985); ***Williams v. Imhoff***, 203 F.3d 758, 764 (10th Cir.

---

[1] "[#133]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's electronic case filing and management system (CM/ECF). I use this convention throughout this order.

2000). I then must consider whether any statute or policy renders the claims non-arbitrable. *Mitsubishi Motors Corp.*, 105 S.Ct. at 3355; *Williams*, 203 F.3d at 764.

### III. ANALYSIS

Plaintiff was employed by defendant, most recently as Plant Manager of its Aurora, Colorado, manufacturing facility. From March to October 2009, plaintiff participated in an investigation of complaints of discrimination brought by two female employees against the facility's general manager, Rik McCoy. Plaintiff also raised questions with senior management about Mr. McCoy's personal relationship with a female client. He claims that, as a result, Mr. McCoy began to more closely scrutinize his work performance and go through his office after business hours.[2] Ultimately, Mr. McCoy was fired on July 28, 2009.

Nevertheless, plaintiff alleges that the regional general manager, Cory Hall, thereafter began to intimidate him and became critical of his job performance, blaming him and the female employees for Mr. McCoy's termination. During a performance review on August 27, 2009, Mr. Hall allegedly told plaintiff to start looking for a new job. In addition, plaintiff's new general manager repeated this advice in October 2009. Finally, on November 4, 2009, plaintiff was placed on administrative leave pending an investigation into allegations that he interfered with an employee survey. His employment was ultimately terminated on November 10, 2009.

Plaintiff brings claims of retaliation under Title VII and wrongful discharge under Colorado state law. Defendant maintains that these claims are subject to arbitration under the terms of the company's Dispute Resolution Policy ("DRP" or "the policy"), which was instituted in 2002, when defendant was acquired by Masco Corporation. The

---

[2] Plaintiff alleges that videotape from surveillance cameras at the facility confirms this allegation.

2

DRP provides, in relevant part:

> Under this Policy, which is a condition of continued employment and binding upon the Company and the employee, all claims and disputes arising out of the employee's employment or termination, which are not resolved through the Company's Open Door Policy and other normal human resources channels, shall be resolved through mediation and, if necessary, binding arbitration.

(**Def. Motion App.,** Exh. 3 at 1.) The policy covers "any claim under applicable state or federal law an employee within the United States might have against the Company including, for example, all claims for: . . . all forms of unlawful discrimination," and manifests "the intent to submit to mediation and arbitration to the fullest extent permitted by law all disputes an employee might have against the Company," with certain limited exceptions not implicated here. (*Id.*)

Defendant asserts that it conducted an audit of plaintiff's personnel file on October 2, 2009, and noted a signed copy of the DRP in the file. However, a subsequent check after this litigation was commenced found no such document in the file. Plaintiff contends that he never signed the DRP or otherwise agreed to its terms. On the other hand, he does acknowledge receiving a copy of defendant's February 2002 Employee Handbook, which referred to the DRP:

> In the event of a dispute that cannot be resolved through the aforementioned internal process, the company has a **Dispute Resolution Policy** for mediation and arbitration, which are independent, fair, and equitable to all parties. This policy is a condition of continued employment and binding upon the Company and the employee and will be conducted by a neutral third party. If necessary, please contact your Human Resources Department for further information regarding this process.

(**Def. Motion App.**, Exh. 4 at 4-5.) Plaintiff signed an acknowledgment of receipt of the Handbook on November 8, 2002. (*Id.*, Exh. 5.)

3

The question whether the parties agreed to arbitrate their dispute focuses on two considerations: (1) whether there is a valid agreement to arbitrate; and (2) whether the dispute falls within the scope of that agreement. *See National American Insurance Co. v. SCOR Reinsurance Co.*, 362 F.3d 1288, 1290 (10th Cir. 2004); *Via Fone, Inc. v. Western Wireless Corp.*, 106 F.Supp.2d 1147, 1150 (D. Kan. 2000). "The existence of an agreement to arbitrate is a threshold matter which must be established before the FAA can be invoked." *Avedon Engineering, Inc. v. Seatex*, 126 F.3d 1279, 1287 (10th Cir. 1997). State law principles of contract formation govern whether a valid arbitration agreement exists. *Hardin v. First Cash Financial Services, Inc.*, 465 F.3d 470, 475 (10th Cir. 2006). There is no presumption in favor of arbitration with respect to this prong of the test. *See Axis Venture Group, Inc. v. 1111 Tower, LLC*, 2010 WL 1278306 at *2 (D. Colo. March 30, 2010). Defendant bears the initial burden to present evidence sufficient to suggest that an enforceable agreement to arbitrate exists. *Id.* at *3. If it does so, the burden then shifts to plaintiff to demonstrate a genuine issue of material fact as to the making of the agreement. *Id.*

Plaintiff asserts that he never saw the DRP until Mr. McCoy presented him with a copy in 2009 and that he refused to sign the policy at that time. Moreover, as noted above, there is no documentary evidence in plaintiff's personnel file demonstrating that plaintiff signed the DRP. The first question therefore is whether the Employee Handbook, which plaintiff does acknowledge receiving, constitutes a valid agreement to arbitrate.

I find that it does not. The Handbook explicitly disclaims the intention to create a contract. (*See* **Def. Motion App.**, Exh. 5 ("[T]his handbook is not intended to be, nor should it be construed as a contract, express or implied.") Although the Handbook

4

specifically exempts the DRP from this exclusion (*see id.*, Exh. 4 at 4), it does not specifically set forth the material terms and conditions of the DRP. In this respect I agree with plaintiff that the facts of this case parallel those addressed by the court in ***Stein v. Burt-Kuni One, LLC***, 396 F.Supp.2d 1211 (D. Colo. 2005). There, the court found that the description of the company's arbitration policy contained in the defendant's Hiring Policy[3] was too ambiguous to create a binding contract. Instead, the court concluded that the Hiring Policy simply provided notice to the plaintiff that he would be required to agree to arbitration as a condition of employment. *Id.* at 1216.

Likewise in this case, the Employee Handbook specifically disclaimed any intention to create a contract. Although the Handbook notified employees that the DRP existed and that it was a contract to which employees would be required to agree in order to continue employment, it did not set forth the terms of the DRP in sufficient detail to create a contract on its own.

My conclusion in this regard, however, does not end the matter. The ***Stein*** court went on to note that although the Hiring Policy did not create a contract, the employee handbook, containing the arbitration provision referenced in the Hiring Policy, purported to do so. *See id.* The ***Stein*** court concluded that the contract purportedly created by the handbook in that case was illusory because the employer retained the unilateral

---

[3] The Hiring Policy was provided to plaintiff in connection with his application for employment and provided, in relevant part:

> Binding Arbitration – The Company utilizes a system of alternative dispute resolution that involves binding arbitration, in part, because of the benefits (such as reduced expense and increased efficiency) that private binding arbitration can provide both the Company and employees. Agreeing to binding arbitration is a condition of application and employment with the Company.

***Stein***, 396 F.Supp.2d at 1214 (citation omitted).

5

right to modify its terms. *See id.* at 1215-16. Nevertheless, it is clear from that decision that the failure of the Employee Handbook to create a valid contract is not itself dispositive and that the court must look further to determine whether the parties agreed to arbitrate. I therefore turn my attention to the DRP itself.

"Under Colorado law, an implied-in-fact contract may arise from conduct of the parties which evidences a mutual intention to contract with each other." ***New York Life Insurance Co. v. K N Energy, Inc***., 80 F.3d 405, 412 (10th Cir. 1996) (citation and internal quotation marks omitted). Such mutual intention was manifested in this case when defendant notified plaintiff, via the Handbook, that the DRP existed and that acceptance of the terms thereof was a condition of continued employment, and plaintiff continued his employment for 7 more years. *See Hardin*, 465 F.3d at 476; ***Frymire v. Ampex Corp.***, 61 F.3d 757, 769-70 (10th Cir. 1995), *cert. dismissed*, 116 S.Ct. 1588 (1996); ***Rangel v. Hallmark Cards, Inc.***, 2010 WL 781722 at *6-*7 (D. Kan. March 4, 2010); ***Durkin v. CIGNA Property & Casualty Corp.***, 942 F.Supp. 481, 488 (D. Kan. 1996). The Handbook instructed employees where to get further information about the DRP, and thus plaintiff's purported ignorance of the policy, whether willful or otherwise, does not absolve him from being bound by the agreement, which he accepted with his actions. *See* ***Vernon v. Qwest Communications International, Inc.***, 857 F.Supp.2d 1135, 1150-51 (D. Colo. 2012) (although contract containing arbitration provision was not physically presented to each plaintiff, terms and conditions thereof were not hidden or difficult to find); *see also* ***Elsken v. Network Multi–Family Security Corp.***, 49 F.3d 1470, 1473-74 (10th Cir. 1995) (plaintiff bound by contract terms even though she did not read the contract).

Moreover, whether plaintiff signed a copy of the DRP *vel non* is irrelevant. Although the Federal Arbitration Act requires that the arbitration provision be in writing, *see* 9 U.S.C. § 2, it does not require the party to be charged to have signed the writing, **Medical Device Corp. v. Industrial Molding Corp.**, 479 F.2d 345, 348 (10th Cir. 1973); **Durkin**, 942 F.Supp. at 487; **Ketchum v. Almahurst Bloodstock IV**, 685 F.Supp. 786, 790 (D. Kan. 1988). In addition, plaintiff's rejection of the terms of the DRP in 2009 was ineffective, since he had already acquiesced to the policy in 2002. His purported rejection, therefore, was at best an attempt to repudiate the contract already formed, although given that no litigation was then contemplated or pending between the parties, plaintiff's statements were not sufficient to require definitive action on defendant's part. **See Morally v. Marabella Partners, LLC**, 2006 WL 2038388 at *5 (D. Colo. July 19, 2006) ("[A] repudiation of a contract must consist of a present, positive, unequivocal refusal to perform the contract, not a mere threat to abandon its obligations under the contract.") (citation omitted).

Plaintiff argues that, to the extent an agreement to arbitrate exists, it is illusory. A promise to arbitrate is illusory where the employer disclaims the intention to create a contract or retains the unilateral right to alter or amend the terms of the policy in its sole discretion. **See Gourley v. Yellow Transportation, LLC**, 178 F.Supp2.d 1196, 1202-03 (D. Colo. 2001). Plaintiff's argument, however, is premised entirely on the language of the Employee Handbook in which defendant specifically disclaimed any intention to create a contract. Plaintiff has offered neither argument nor authority demonstrating that the DRP itself is illusory. In fact, the DRP provides expressly that it is binding on both defendant and the employee. Although defendant reserved the right to change, modify, or discontinue the DRP, that right was conditioned on prior written notice to

7

employees, which condition precedent has been found to make the agreement not illusory.  *See  Gratzer v. Yellow Corp.*, 316 F.Supp.2d 1099, 1106 (D. Kan. 2004); *Pierce v. Kellogg, Brown & Root, Inc.*, 245 F.Supp.2d 1212, 1215 (E.D. Okla. 2003).

Plaintiff also contends that the DRP is void as against public policy because it does not specifically exempt an employee's right to file a Charge of Discrimination with the EEOC or the comparable Colorado state agency.[4]  However, in a section entitled "Questions and Answers," the DRP specifically answers in the affirmative the question "Will I still be able to go to the Equal Employment Opportunity Commission or any other state or federal agency to complain about a problem?"  (*See* **Def. Motion App.**, Exh. A at 8.)[5]  Nor is the policy void for denying employees the right to seek attorney fees. Nothing in the policy precludes any right a prevailing employee might have to recover attorney fees otherwise available under law.  Indeed, the policy specifically provides that the arbitrator "has the same authority as a judge or jury in the applicable jurisdiction in making monetary awards and granting relief."  *Cf. Gourley*, 178 F.Supp.2d at 1204 (arbitration policy that denied parties right to file post-hearing briefs impermissibly infringed on statutory right to recover attorney fees and was therefore void).[6]

---

[4]  Plaintiff also points to a document entitled "Procedures for Filing and Resolving Discrimination Complaints" which states that "[a]n employee may utilize the Dispute Resolution Policy if the employee is dissatisfied with the investigation or resolution implemented by Milgard."  (**Plf. Motion App.**, Exh. A, att. 1 at 2.)  Plaintiff  reads too much into this language, however, to suggest that it renders resort to arbitration entirely discretionary at the employee's election.  Instead, the document merely advises the employee that arbitration is available, although not mandatory, if he is dissatisfied with the result of the internal grievance procedures outlined in the document.

[5]  The DRP goes on to explain that it "applies only to relief you might seek personally through the courts for a dispute.  You are still free to consult with and file charges with the [EEOC], the Department of Labor, the National Labor Relations Board, or any other appropriate state or federal regulatory body regarding workplace disputes."  (**Def. Motion App.**, Exh. A at 8.)

[6]  Because these provisions do not violate public policy and are otherwise enforceable, the lack of a severability clause does not preclude defendant from relying on the DRP.  *Cf. Gourley*, 178 F.Supp.2d at 1205.

For these reasons, I find and conclude that the DRP constitutes a valid and enforceable agreement to arbitrate to which both parties are bound. Neither party suggests that plaintiff's claims do not fall within the broad scope of the DRP, and I find the language of the agreement sufficient to encompass them. Defendant's motion to stay this case pending arbitration therefore will be granted. **See** 9 U.S.C. § 3.[7] Additionally, pursuant to D.C.COLO.LCivR. 41.2, I will administratively close this case, subject to reopening for good cause.

Although defendant also requests an award of attorney fees pursuant to 28 U.S.C. § 1927, it presents neither argument nor evidence suggesting that plaintiff's filing of this lawsuit evidences the type of "serious . . . disregard for the orderly process of justice" that would warrant the imposition of sanctions under this statute. **Braley v. Campbell**, 832 F.2d 1504, 1512 (10th Cir. 1987). As for defendant's request for an award of costs, such are available under Fed. R. Civ. P. 54(d)(1) only to a "prevailing party." Under the local rules of this district, costs are awardable only in connection with a judgment or final order. **See D.C.COLO.LCivR** 54.1. Defendant has offered neither argument nor authority to support the conclusion that it is the prevailing party in the

---

[7] Despite the seemingly mandatory language of section 3, the majority of federal courts hold that a district court may dismiss rather than stay a complaint when all claims therein are arbitrable. **See, e.g.**, **Choice Hotels International, Inc. v. BSR Tropicana Resort, Inc.**, 252 F.3d 707, 709-10 (4th Cir. 2001); **Green v. Ameritech Corp.**, 200 F.3d 967, 973 (6th Cir. 2000); **Fedmet Corp. v. M/V BUYALYK**, 194 F.3d 674, 678 (5th Cir. 1999); **Bercovitch v. Baldwin School, Inc.**, 133 F.3d 151, 156 & n.21 (1st Cir. 1998); **Sparling v. Hoffman Construction Co.**, 864 F.2d 635, 638 (9th Cir. 1988); **Black and Veatch International Co. v. Wartsila NSD North America, Inc.**, 1998 WL 953966 at *4 (D. Kan. Dec. 17, 1998). **But see Lloyd v. Hovensa, LLC**, 369 F.3d 263, 269-71 (3rd Cir. 2004). Although the Tenth Circuit has not addressed this issue directly, it has intimated that a district court may dismiss when a party specifically requests dismissal rather than a stay. **See Armijo v. Prudential Insurance Co. v. America**, 72 F.3d 793, 796-97 (10th Cir. 1995) (finding appellate jurisdiction from order dismissing a case in which all claims were referred to arbitration and distinguishing **Adair Bus Sales, Inc. v. Blue Bird Corp.**, 25 F.3d 953, 954-55 (10th Cir. 1994), in which appellate jurisdiction of order compelling arbitration was found lacking because defendant had requested a stay, not dismissal).

Because defendant here does not request dismissal, either principally or in the alternative, I am foreclosed by **Adair** from doing other than staying this action.

sense relevant to entitle it to an award of costs.

## IV.  ORDERS

**THEREFORE, IT IS ORDERED** as follows:

1. That **Defendant Milgard's Motion To Compel Arbitration** [#133], filed September 19, 2012, is **GRANTED IN PART** and **DENIED IN PART** as follows:

    a. That the motion is **GRANTED** insofar as it seeks to compel arbitration of plaintiff's claims and stay this litigation pending completion of arbitration; and

    b. That in all other respects, the motion is **DENIED**;

2. That the parties are **ORDERED** to proceed to arbitration of plaintiff's claims;

3. That this case is **STAYED** pending the outcome of the arbitration;

4. That the Trial Preparation Conference, currently scheduled for Friday, June 28, 2013, at 2:00 p.m., a well as the trial, currently scheduled to commence on Monday, July 15, 2013, are **VACATED**; and

5. That this case shall be **ADMINISTRATIVELY CLOSED** pursuant to D.C.COLO.LCivR 41.2, subject to reopening for good cause.

Dated December 13, 2012, at Denver, Colorado.

                                                       **BY THE COURT:**

                                                       Robert E. Blackburn
                                                     United States District Judge